CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
11/15/2024
LAURA A. AUSTIN, CLERK
BY: *s/C. Kemp*
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| MELISSA BOHLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:24-cv-00021 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By:  Hon. Thomas T. Cullen |
| | ) |       United States District Judge |
| Defendant. | ) | |

Plaintiff Melissa Bohlman ("Bohlman") filed suit against the United States on April 29, 2024, alleging a violation of the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*. (*See generally* Compl. [ECF No. 1].) On August 26, 2024, the United States filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), alleging a lack of subject-matter jurisdiction. (ECF No. 13.) The parties fully briefed the motion, and it is now ripe for decision. For the reasons explained below, the court finds that it lacks subject-matter jurisdiction over this case and will dismiss this action without prejudice.

I. **BACKGROUND**

The following facts are taken from Bohlman's complaint and, at this stage, are presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences are drawn in favor of the plaintiff. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

In 1948, the United States Army Corps of Engineers ("USACE") built the Philpott Dam in Bassett, Virginia, to provide flood control to the Roanoke Valley. (Compl. ¶ 8.) In 1953, the USACE built the Philpott Dam Powerhouse ("Powerhouse") to generate

hydroelectric power for the region. (*Id.* ¶ 8.) At all relevant times, the Powerhouse was owned and managed by the USACE. (*Id.* ¶ 10.)

On May 25, 2020, heavy rains triggered a landslide that severely damaged the Powerhouse, causing it to shut down. (*Id.* ¶ 11.) To repair the Powerhouse, the USACE solicited bids for "the Unit 1 and 2 Turbine/Generator Rehab" at the Powerhouse. (*Id.* ¶ 12.) The scope of the work included replacing turbine runners and wicket gates, rewinding generators, refurbishing mechanical and electrical components, installing new controls and fire suppression systems, and performing operational tests. (*Id.* ¶ 12.) GE Renewables US LLC ("GE Renewables") bid on the USACE proposal. (*Id.* ¶ 13.) On March 29, 2021, the USACE awarded the contract, valued at $21,143,078.65, to GE Renewables. (*Id.*)

At the time of the contract, GE Renewables employed Bohlman as a "lead mechanical engineer." (*Id.* ¶ 14.) In June 2021, Bohlman traveled to the Powerhouse to assess the Powerhouse and take any measurements necessary for the rehabilitation project. (*Id.*) The night before she arrived, the Powerhouse weathered a severe thunderstorm. (*Id.* ¶ 16.) On June 14, 2021, Bohlman arrived at the Powerhouse early in the morning and signed in on the logbook. (*Id.* ¶¶ 15, 17.) Bohlman spoke with the USACE's maintenance crew on site and discussed her list of work tasks and the items she had to inspect. (*Id.* ¶ 17.) Bohlman, accompanied by a USACE electrician, went to the dam warehouse where she took photographs and measured the dimensions of various equipment. (*Id.* ¶ 18.) They then went to the Powerhouse, where Bohlman was supposed to take additional photographs and measurements. (*See id.* ¶¶ 19, 20.)

During her inspection, Bohlman asked the USACE electrician "about the clearances for Unit Two," the electrician said "nothing had changed since the last site visit," and the two "discussed that the exciter was not energized since the Unit was dewatered and not spinning." (*Id.* ¶ 20.) Bohlman and the electrician then discussed the state of Unit Two and how she could take her required measurements. (*Id.* ¶ 21.) Bohlman followed the "Lockout/Tagout" ("LOTO") safety protocol to disable the machinery and prevent the release of hazardous electrical energy or an accidental start-up until the maintenance work was completed. (*Id.*) She also put on a Tyvek suit, safety vest, and harness, in addition to her standard safety glasses, steel-toed boots, and hard hat. (*Id.* ¶ 22.)

After completing the proper safety precautions, Bohlman climbed onto the scaffolding above the equipment and began taking measurements and drawing sketches of the Unit. (*Id.*) While taking measurements of the main generator leads, Bohlman was electrocuted on her left forearm. (*Id.* ¶ 23.) The shock left a mark on her arm and a burn mark on her shirt. (*Id.*) Soon after, Bohlman started to feel ill and asked to be taken to the hospital. (*Id.* ¶ 24.) A USACE employee then drove her to the hospital. (*Id.*) Bohlman received treatment for her injury at the hospital and claims she suffered severe long-term consequences from the electrical shock. (*Id.* ¶ 25.)

After the incident, Bohlman learned that USACE employees had failed to properly ground the generator of Unit Two before she began her work, despite representing, through LOTO tags and her conversation with the electrician, that the equipment was "deenergized." (*Id.* ¶¶ 26, 28.) Because of the improper grounding, the generators were still capable of inducting and storing unsafe energy even when offline. (*Id.* ¶ 29.) In fulfilling her duties,

Bohlman relied on the USACE employees' representations that the equipment was not energized. (*Id.* ¶ 31.) She also claims that, shortly after she was electrocuted but before she was taken to the hospital, the USACE employees applied the proper grounds. (*Id.* ¶ 30.) At all relevant times, the United States had exclusive control over, and responsibility for, the Powerhouse and its equipment. (*Id.* ¶ 27.)

As a result of this incident, Bohlman brought a negligence action against the United States and seeks $7,000,000 in compensatory damages. (*See id.* ¶¶33–43.) The United States now moves to dismiss this action under Rule 12(b)(1) for lack of subject-matter jurisdiction, arguing that the Virginia Workers Compensation Act, Va. Code Ann. § 65.2-100 *et seq.* ("VWCA"), is the exclusive remedy for Bohlman's claims.

## II.   STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(1) challenge the court's jurisdiction over the subject matter of the complaint. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "[T]he burden of proving subject matter jurisdiction is on the plaintiff." *Id.*; *see also Wheeler v. Wiseman Enters., Inc.*, No. 4:10-cv-00040, 2011 WL 1457464, at *4 (W.D. Va. Apr. 15, 2011) ("It is . . . Plaintiff's burden to prove that the VWCA's exclusivity provision does not preclude this court's subject[-]matter jurisdiction."). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

Challenges to subject-matter jurisdiction can be presented either facially or factually. *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018). "In pursuing

a facial challenge, the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Id.* at 621 n.7. On the other hand, to sustain a factual challenge a defendant must demonstrate that the "jurisdictional allegations of the complaint are not true." *Id.* When a defendant challenges the factual basis for subject-matter jurisdiction, "a trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations, without converting the motion to a summary judgment proceeding." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (cleaned up).

### III. ANALYSIS

In this case, the United States makes a facial challenge to subject-matter jurisdiction, asserting that the VWCA provides Bohlman's exclusive remedy at law and bars suit against the United States under the facts alleged. (Mem. Supp. Mot. Dismiss at 4–5 [ECF No. 14].) Bohlman contends that her claim is not barred by the VWCA, and that there is at least a dispute over material jurisdictional facts that requires additional evidence. (*See* Mem. Opp'n Mot. Dismiss at 2–5 [ECF No. 18].)

#### A. Federal Law—FTCA

Both parties agree that the Federal Tort Claims Act ("FTCA") governs this case and sets the determinative standard for jurisdiction. Generally, the United States is immune from suit unless it expressly consents to be sued. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). "A waiver of the Federal

Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Through the FTCA, Congress waived the United States' sovereign immunity for certain torts committed by federal employees. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Specifically, the FTCA allows a plaintiff to sue the United States for "money damages . . . for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Therefore, the law of the state in which the act or injury occurred controls—in this case, Virginia. *See, e.g.*, *Coulter v. United States*, 256 F. Supp. 2d 484, 488 (E.D. Va. 2003) (applying Virginia law under the FTCA when the alleged tortious conduct and the injury occurred in Virginia).

**B. Virginia Law—VWCA**

The question then is whether Virginia law, through the VWCA, operates to bar Bohlman's negligence action against the United States. *See id.* Under the VWCA, an employee has an exclusive statutory remedy for injuries resulting "from an accident arising out of and in the course of the injured employee's employment." *Amisi v. Brooks*, 93 F.4th 659, 671 (4th Cir. 2024) (quoting *Simms v. Ruby Tuesday, Inc.*, 704 S.E.2d 359, 362 (Va. 2011)). If the VWCA applies to an employee's claim, then the VWCA provides the "sole and exclusive remedy available against the employer." *Id.* (quoting *Butler v. S. States Co-op., Inc.*, 620 S.E.2d 768, 772 (Va. 2005)); *see* Va. Code Ann. § 65.2-307(A) ("The rights and remedies herein granted to an employee . . . shall exclude all other rights and remedies of such employee . . . ."). The

- 6 -

exclusivity provision of the VWCA, therefore, would give Bohlman the right to assert a claim for workers' compensation benefits under the statute, but deprives her of "the right to sue [her] employers in tort for negligence (a right that [she] [would have] possessed under the common law)." *Lopez v. Intercept Youth Servs., Inc.*, 861 S.E.2d 392, 394 (Va. 2021); *see also Amisi*, 93 F.4th at 671 ("Virginia law treats the exclusivity provision as conferring immunity from suit."). In other words, if Bohlman's claim is covered by the VWCA, her tort claim will be barred.

## 1. Statutory Employer

To determine whether the VWCA applies to Bohlman's claim, the court must first determine whether the United States qualifies as Bohlman's "statutory employer" under the Act. *See* Va. Code Ann. § 65.2-302. The analysis begins with the statutory text:

> When any person (referred to in this section as "owner") undertakes to perform or execute *any work which is part of his trade, business, or occupation* and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Va. Code Ann. § 65.2-302(A) (emphasis added). The primary inquiry, therefore, is whether the contracted work constitutes "work which is part of [the owner's] trade, business, or occupation." *Coulter*, 256 F. Supp. 2d at 489 (quoting Va. Code Ann. § 65.2-302(A)) (alteration in original). At this point, the parties diverge.

### i. *Henderson* vs. *Shell Oil* Tests

The Virginia Supreme Court has described two slightly different tests for how to interpret § 65.2-302(A)'s "trade, business, or occupation" clause. In *Shell Oil Co. v. Leftwich*, 187 S.E.2d 162 (Va. 1972), the Virginia Supreme Court articulated a "normal work" test where the court looks to whether the activity "is, in that business, normally carried on through employees rather than independent contractors." *Id.* at 167. But later, in *Henderson v. Central Telephone Co. of Virginia*, 355 S.E.2d 596 (Va. 1987), the Virginia Supreme Court recognized that "determining whether activities fall within or without an entity's trade, business, or occupation is not a simple, straightforward exercise." *Id.* at 599. In *Henderson*, the Virginia Supreme Court refused to apply the *Shell Oil* test to a case involving a public utility or governmental entity. *Id.* ("The [*Shell Oil*] test is merely an approach that is useful . . . . [i]t is not designed for every situation."). Instead, since a governmental entity has "duties, obligations, and responsibilities imposed upon it by statute, regulation, or other means," a court must consider "the laws under which they were created and under which they functioned in determining their trade, business, or occupation." *Id.* at 600 (distinguishing private businesses who often define their trade, business, or occupation by their own day-to-day conduct). Here, the government argues that, since the USACE is a governmental entity, the *Henderson* test applies. (*See* Reply at 2 [ECF No. 19].) Bohlman disagrees; she contends that, because the FTCA puts the government in the place of a "private person," the *Shell Oil* test applies. (Mem. Opp'n Mot. Dismiss at 3–4.)

Under Virginia law, the first step in deciding the question is identifying "the nature of the particular owner." *Rodriguez ex rel. Estate of Rodriguez v. Leesburg Bus. Park, LLC*, 754 S.E.2d 275, 279 (Va. 2014) (internal quotation omitted). If the owner is a private entity that has "broad

discretion to choose its business activities," then the *Shell Oil* test generally applies. *Id.* But if the owner is a public utility or governmental entity, the *Henderson* test applies. *See, e.g., id.*; *Roberts v. City of Alexandria*, 431 S.E.2d 275, 276 (Va. 1993); *Coulter*, 256 F. Supp. 2d at 489–90 (applying *Henderson* to the United States Marine Corps); *Nelson v. U.S. Postal Serv.*, 189 F. Supp. 2d 450, 458 (W.D. Va. 2002) (applying *Henderson* to the United States Postal Service).

Soon after the *Henderson* decision in Virginia, the Fourth Circuit specifically addressed these different tests in *Pendley v. United States*, 856 F.2d 699 (4th Cir. 1988). In *Pendley*, the Fourth Circuit described the case, as here, of an "upside down" worker's compensation case where the plaintiff seeks to narrowly construe the definition of "statutory employer" to avoid the exclusivity bar. *Id.* at 701. Pendley raised an argument, identical to Bohlman's, that the *Henderson* test does not apply because the FTCA requires that the government be treated as a private individual in like circumstances. *Id.* at 702. But the Fourth Circuit expressly rejected that argument, finding that "[t]hat approach reads *Henderson* too narrowly" and that *Henderson* applies where any entity, even if a private individual, is operating its business under statute or regulation.[1] *See id.* (affirming the district court decision applying *Henderson* and finding that the United States Air Force was plaintiff's statutory employer under the VWCA).

Here, the United States, through the USACE, is unquestionably a governmental entity and one that exists and operates under myriad statues and regulations. Because both Virginia and the Fourth Circuit have thoroughly explained the applicable test, and the FTCA's

---

[1] In fact, the case of *Henderson* itself involved the Virginia Supreme Court applying its test to a private telephone company operating under statutes and regulations. *See Pendley*, 856 F.2d at 702; *Henderson*, 355 S.E.2d at 599.

animating principle is to follow the law of the state where the action occurred, the court finds that the *Henderson* test applies in this case.[2]

### ii. Applying *Henderson*

Under *Henderson*, "the scope of a governmental entity's trade or business is governed by a consideration of what the entity is 'authorized and empowered by legislative mandate to perform.'" *Coulter*, 256 F. Supp. 2d at 490 (quoting *Roberts*, 431 S.E.2d at 276). The government argues that the USACE has a legislative mandate to capture hydropower and repair related equipment, therefore making Bohlman's job "work which is part of [the United States'] trade, business, or occupation." (Mem. Supp. Mot. Dismiss at 5–6.)

The Flood Control Act of 1936 grants the "Department of the Army under the direction of the Secretary of the Army and supervision of the Chief of Engineers" jurisdiction over "waterways for flood control and allied purposes." 33 U.S.C. § 701b. The Flood Control Act of 1944 then authorized the Secretary of the Army and the USACE to construct, operate, and maintain dam and reservoir projects, such as the Philpott Dam. The Army's control over these projects has long been confirmed. *See ETSI Pipeline Project v. Missouri*, 484 U.S. 495, 505 (1988).

By statute, the USACE is required to sell excess "[e]lectric power and energy generated at reservoir projects under the control of the Department of the Army . . ." to the Secretary of Energy. 16 U.S.C. § 825s. The United States, through the Secretary of Energy, is also authorized to "construct or acquire . . . transmission lines and related facilities as may be

---

[2] Since the *Henderson* test applies, the court does not need to request additional evidence or discovery from the parties, as Bohlman requests, to resolve a factual dispute as to whether the work she was performing at the time of her injury was part of the "normal work" the United States performs. (*See* Mem. Opp'n Mot. Dismiss at 5.)

- 10 -

necessary in order to make the power and energy generated at [USACE] projects available." *Id.* Here, the USACE contracted with GE Renewables to carry out this function, as mandated by law, and the work Bohlman performed was of the type that the USACE is authorized to undertake.[3] Therefore, based on the statutory authority of the United States, through the USACE, to oversee and maintain facilities and equipment at the Philpott Dam Powerhouse, the court holds that, under Virginia law, the United States qualifies as Bohlman's statutory employer within the meaning of the VWCA.

### 2. Injury

After determining that the United States is Bohlman's statutory employer, the court must ask whether there was "(1) an 'injury by accident' that (2) both (a) arose out of and (b) occurred in the course of [Bohlman's] employment for the [USACE]." *Amisi v. Riverside Reg'l Jail Auth.*, 469 F. Supp. 3d 545, 561 (E.D. Va. 2020); *see* Va. Code Ann. § 65.2-300. Unless Bohlman plausibly alleges otherwise, the VWCA will cover her claim. *Amisi*, 469 F. Supp. 3d at 561.

First, an "injury by accident" for purposes of the VWCA is one that "results in a sudden mechanical or structural change in the body" and is not a cumulative or gradually incurred injury. *Lichtman v. Knouf*, 445 S.E.2d 114, 115 (Va. 1994). To establish an "injury by accident," a plaintiff must allege "(1) that the injury appeared suddenly at a particular time and place and upon a particular occasion, (2) that it was caused by an identifiable incident or sudden

---

[3] Moreover, the Fourth Circuit and the Eastern District of Virginia have often adopted a broad view of what agencies are statutorily authorized to do. *See Holderfield v. Thyssenkrupp Elevator Corp.*, No. 1:20-cv-01599, 2022 WL 980638, at *6 (E.D.V.A. Mar. 30, 2022) (collecting cases).

precipitating event, and (3) that it resulted in an obvious mechanical or structural change in the body." *S. Express v. Green*, 509 S.E.2d 836, 839 (Va. 1999).

In this case, Bohlman alleges that she suffered a sudden electric shock at a particular time when working with the generators. This shock left a visible burn mark on her clothing and skin and made her physically ill. Such a discrete, identifiable event falls squarely within the ambit of this test and constitutes an accidental injury by any reasonable measure of experience or common sense. Therefore, Bohlman has clearly pleaded an "injury by accident" covered by the VWCA.

Second, such an injury must occur "in the course of" and "arise out of" a plaintiff's employment. An injury occurs in the course of employment "when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while [she] is reasonably fulfilling the duties of [her] employment." *Conner v. Bragg*, 123 S.E.2d 393, 396 (Va. 1962). When the injury occurred, Bohlman was in the process of taking measurements of the generator equipment in the Powerhouse. This task was clearly described as one of the duties Bohlman was assigned to complete as part of her work. Accordingly, it is eminently reasonable that Bohlman would be in the Powerhouse and working with the generators to fulfill her duties. Her injury thus occurred "in the course" of her employment.

To determine whether an injury "arose out of" a plaintiff's employment, Virginia courts apply an "actual risk" test. *Morgan v. Brophy*, No. CL18-6321, 2019 WL 5789592, at *3 (Va. Cir. Ct. Feb. 13, 2019). Under the "actual risk" test, an injury falls within the VWCA "only if there is causal connection between the employee's injury and the conditions under which the employer requires the work to be done." *Hilton v. Martin*, 654 S.E.2d 572, 574 (Va. 2008). In

other words, the injury must be "fairly traced" to Bohlman's specific job and not a result of a "hazard to which the employee would have been equally exposed apart from the employment." *Amisi*, 469 F. Supp. 3d at 563 (quoting *Taylor v. Mobil Corp.*, 444 S.E.2d 705, 708 (Va. 1994)).

Here, Bohlman's job presented an "actual risk" of harm where her electrical injury can be fairly traced to her specific work with the Powerhouse generators. Moreover, the safety protocols demonstrate that an electrical shock is the specific type of risk contemplated by this industry for an employee performing Bohlman's duties and is one that is different from any hazard a person may normally be exposed to apart from doing this job. Accordingly, the court finds that Bohlman's injury "arose out of" her employment, and therefore the VWCA applies to her claim.

## IV. Conclusion

For the foregoing reasons, the court finds that the VWCA applies to Bohlman's negligence claim against the United States. Because the VWCA applies to Bohlman's claim, her sole remedy is under that statute. Therefore, the court will grant the government's motion to dismiss under 12(b)(1) for lack of subject-matter jurisdiction.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 15th day of November, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE